**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **XTREME CAGED COMBAT, et al,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **14-5159** |
| **CAGE FURY FIGHTING** | : | |
| **CHAMPIONSHIPS, et. al.** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**Stengel, J.**                                                    **May 29, 2015**

Ryan Kerwin and Xtreme Caged Combat filed this *pro se* antitrust complaint against several competing mixed martial arts fight promotors, two casinos and one casino executive. Plaintiffs also append a count for tortious interference with prospective contractual relations. The casinos and the executive now move to dismiss the amended complaint. For the reasons that follow, I will grant the motion in part.

**I       Background**

Ryan Kerwin owns and operates Xtreme Caged Combat (XCC). XCC is licensed by the Commonwealth of Pennsylvania to promote mixed martial arts (MMA) events. Am. compl. ¶¶ 3, 4. MMA is a combat sport which features two competitors fighting inside an enclosed area. Id. ¶ 66. Rob Haydak owns defendant Cage Fury Fighting Championships (CFFC). Id. ¶¶ 5, 7. David Feldman owns defendant Xtreme Fight Events (XFE). Id. ¶¶ 6, 8. CFFC and XFE also promote MMA events in Pennsylvania and New

1

Jersey. Id. ¶¶ 5, 6. Since plaintiffs allege that XFE has merged into CFFC, Id. ¶ 45, I will refer to CFFC when discussing allegations against the fight promotor defendants

Plaintiffs allege that CFFC illegally conspired with Chester Downs and Marina LLC and Valley Forge Casino Resort to monopolize and restrict trade in the MMA events market in the Philadelphia Region. Id. ¶¶ 65 – 72. Chester Downs and Marina LLC operates a casino in Chester, Pennsylvania more commonly known as Harrah's. Id. ¶ 9. Valley Forge Casino Resort operates a casino in Valley Forge, Pennsylvania. Id. ¶ 12. Valley Forge employs Joel Freedman as its Vice President of Player Development. Id. ¶ 15. Mr. Feldman and Mr. Freedman are friends, and Mr. Feldman leveraged this relationship to secure exclusive venue agreements between CFFC and each casino. Id. ¶¶ 19, 34, 95.

Pursuant to the exclusive venue contracts, Harrah's or Valley Forge will pay CFFC $10,000 for every match it hosts at its respective casino. Id. ¶¶ 19, 20, 34. The casinos provide CFFC with a free venue, chairs, tables and other perks. Id. The contract gives CFFC the exclusive right to host MMA events at the casinos. Id. As a result, plaintiffs are blocked from hosting events at both casinos. Id. Plaintiffs admit that there are other facilities where they can host MMA events. Id. ¶ 52. However, MMA promotors are unable to make a profit at these other venues. Id. ¶¶ 31, 52. According to plaintiffs, by controlling these casino venues, CFFC will drive its competition out of business and achieve a monopoly in the MMA event market in the Philadelphia region. Id. ¶ 61. As a result of its dominant market position, CFFC has already increased ticket

prices for its events. Id. ¶ 60. CFFC has also signed over 60 professional fighters to exclusive deals. Id. ¶ 61.

On September 8, 2014, Mr. Kerwin filed a *pro se* antitrust complaint on behalf of himself and XCC. By orders dated October 27, 2014 and November 10, 2014, I advised Mr. Kerwin, who is not an attorney, that he may not represent XCC. *See* Simbraw, Inc. v. United States, 367 F.2d 373, 373-74 (3d Cir.1966) (holding that a corporation may not be represented by its president in court and that an attorney must appear for it and represent it in the litigation). Subsequently, attorney Jordan Rushie entered his appearance for Xtreme Caged Combat. The casino defendants moved to dismiss the complaint. Doc. no. 4 (Valley Forge); doc. no. 39 (Harrah's). Plaintiffs filed an amended complaint, as of right, which added the charges against Mr. Freedman. Doc. no. 45. The casinos and Mr. Freedman renewed their objections to the allegations in separate motions to dismiss the amended complaint. Doc. no. 47 (Valley Forge); doc. no. 53 (Harrah's); doc. no. 56 (Freedman's notice of joinder in Valley Forge's motion).

## II    Standard of Review

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint need not contain detailed factual allegations, but a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief as prescribed by Rule 8(a)(2). Id. at 1965;

3

Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005). A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In deciding a motion to dismiss under Rule 12(b)(6), I may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Ben.Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). The court is required to accept as true all of the factual allegations in the complaint, Erickson v. Pardus, 551 U.S. 89 (2007), and all reasonable inferences permitted by the factual allegations, Watson v. Abington Twp., 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff. Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007). The court is not, however, "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (quotations and citations omitted). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiffs' claim is "plausible on its face," a complaint will survive a motion to dismiss. Bell Atlantic Corp., 127 S. Ct. at 1965, 1974; Victaulic Co. v. Tieman, 499 F.3d 227, 234-35 (3d Cir. 2007).

## III    Discussion

### a)  Antitrust Standing

Standing is a threshold requirement in all actions in federal court. Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 232 (3d Cir. 2013). Section 4 of the Clayton Act

creates a private cause of action and confers standing on persons injured by an antitrust

violation. The statute provides:

> any person who shall be injured in his business or property by reason of
> anything forbidden in the antitrust laws may sue therefor in any district
> court of the United States … and shall recover threefold the damages by
> him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15(a). "Questions of statutory standing, like other factual issues, are

considered under the same pleading requirements as a motion to dismiss pursuant to

Fed.R.Civ.P. 12(b)(6)." Animal Sci. Products, Inc. v. China Minmetals Corp., 05-CV-

04376, 2014 WL 3695329 (D.N.J. July 24, 2014) (citing Baldwin v. Univ. of Pittsburgh

Med. Ctr., 636 F.3d 69, 73 (3d Cir.2011).

Interpreting the statute, the Supreme Court has recognized that "Congress did not

intend to allow every person tangentially affected by an antitrust violation to maintain an

action to recover threefold damages for the injury to his business or property." Associated

General Contractors of California, Inc. v. California State Council of Carpenters, 459

U.S. 519, 535 (1983) (quoting Blue Shield of Va. v. McCready, 457 U.S. 465, 477

(1982)). Courts have narrowed antitrust standing and consider the following factors to

determine if the complaint is filed by the proper plaintiff:

> (1) the causal connection between the antitrust violation and the harm to the
> plaintiff and the intent by the defendant to cause that harm, with neither
> factor alone conferring standing; (2) whether the plaintiff's alleged injury is
> of the type for which the antitrust laws were intended to provide redress;
> (3) the directness of the injury, which addresses the concerns that liberal
> application of standing principles might produce speculative claims; (4) the
> existence of more direct victims of the alleged antitrust violations; and (5)
> the potential for duplicative recovery or complex apportionment of
> damages.

Ethypharm S.A. France, 707 F.3d at 233 (citing In re Lower Lake Erie Iron Ore Antitrust Litig., 998 F.2d 1144, 1165–66 (3d Cir.1993).

The casinos deny that plaintiffs have pleaded an antitrust injury, which "is a necessary but insufficient condition of antitrust standing." Ethypharm S.A. France, 707 F.3d at 233 (citing Barton & Pittinos, Inc. v. SmithKline Beecham Corp., 118 F.3d 178, 182 (3d Cir.1997)). Plaintiffs must plead an injury to competition in the relevant market and that plaintiffs are competitors or consumers in the relevant market. See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977) (An antitrust injury is "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful"); Ethypharm S.A. France, 707 F.3d at 233. The injury cannot impact the plaintiffs alone. Eichorn v. AT & T Corp., 248 F.3d 131, 140 (3d Cir.2001) (citations omitted). The injury must have a wider impact on the competitive market, and plaintiffs' injury must be attributable to the anticompetitive conduct at issue. Id.; Atl. Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 334 (1990). "[T]he existence of antitrust injury is not typically resolved through motions to dismiss." Schuylkill Energy Res., inc. v. Pennsylvania Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997) (citing Bader v. Alleghen Gen. Hosp., 64 F.3d 869, 876 (3d Cir. 1995)).

To determine the existence of a competitive injury, a court "must always be attuned to the particular structure and circumstances of the industry at issue." ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 283 (3d Cir.2012). Due to the economics of mixed martial arts promotion, a promotor cannot stay in business without access to casino venues. Am. compl. ¶ 52. By restricting access to the casinos, CFFC will eliminate all

competition in the relevant geographic market. Id. ¶ 61. CFFC has achieved dominant

market position through its control of the casinos and has considerably raised prices as a

result. Id. On this basis, plaintiffs have alleged harm to competition. *See* Harrison Aire,

Inc. v. Aerostar Int'l, Inc., 423 F.3d 374, 381 (3d Cir. 2005) (supracompetitive pricing is

evidence of an antitrust violation); Gulfstream III Associates, Inc. v. Gulfstream

Aerospace Corp., 995 F.2d 425, 429 (3rd Cir.1993) (decrease in competition is harm

contemplated by antitrust laws).

Contrary to the casinos' position, the amended complaint alleges that plaintiffs are

competitors in the MMA market. *See* Gulfstream III Associates, Inc., 995 F.2d at 429

("The second requirement is generally met if the plaintiff is a 'competitor [ ]or a

consumer in the relevant market.'"). According to defendants, plaintiffs are not the

proper parties to bring this action because plaintiffs are not licensed to promote MMA

events in Pennsylvania. *See* Ethypharm S.A. France, 707 F.3d at 237 (plaintiff drug

maker did not suffer antitrust injury because it was not authorized by the FDA to sell

relevant product in the United States). This is a compelling argument, but it is based on

facts in direct contradiction to plaintiffs' allegations. Accepting as true the well pleaded

facts in the amended complaint, Mr. Kerwin holds a matchmaker's license for Xtreme

Caged Combat. Am. compl. ¶ 4. Henry Marchione, Mr. Kerwin's employee, holds a

promoter's license for Xtreme Caged Combat. Id. With these licenses, Xtreme Caged

Combat may legally host and promote MMA events. Id. Defendants' protestations to the

contrary are improper at this point in the litigation. Plaintiffs have plausibly claimed an

antitrust injury, and for the purposes of this motion, I find that the plaintiffs have standing.[1]

### b) Count 1 – Refusal to Deal

In Count 1, plaintiffs allege that defendants have refused to deal in violation of section 1 of the Sherman Act. The statute provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States ... is declared to be illegal." 15 U.S.C. § 1. To state a claim under section 1, plaintiffs must allege concerted effort; an unreasonable restraint on trade and an effect on interstate commerce. Armstrong Surgical Ctr., Inc. v. Armstrong Cnty. Mem'l Hosp., 185 F.3d 154, 157 (3d Cir. 1999) (citing Fuentes v. South Hills Cardiology, 946 F.2d 196, 201 (3d Cir.1991)).

#### 1) Concerted effort

Concerted action is the catchall term for contract, combination and conspiracy set out in the Sherman Act. To plead this element, the plaintiffs must allege facts plausibly showing a "conscious commitment to a common scheme designed to achieve an unlawful objective." Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 768 (1984); *see also* Columbia Metal Culvert Co. v. Kaiser Aluminum & Chem. Corp., 579 F.2d 20, 33 (3d Cir. 1978) ("[T]he alleged conspirators had a unity of purpose or a common design and understanding or a meeting of minds in an unlawful arrangement."). The casinos challenge the allegations on two fronts. First, the casinos argue that they cannot conspire

---

[1] "[W]hereas lack of antitrust standing affects a plaintiff's ability to recover, but does not implicate the subject matter jurisdiction of the court[,]" Sullivan v. DB Investments, Inc., 667 F.3d 273, 307 (3d Cir. 2011) (internal citations and quotation marks omitted), I will not consider the remaining standing elements *sua sponte*.

with CFFC because the casinos are not in competition with CFFC. Second, the casinos deny that plaintiffs have sufficiently alleged the existence of an agreement. I am not persuaded by either argument.

The casinos contend that only direct competitors can conspire to violate the Sherman Act. According to this theory, the amended complaint must be dismissed because it does not allege concerted efforts between Harrah's and Valley Forge.[2] However, the casinos ignore a large swath of antitrust law scrutinizing agreements between customers and suppliers known as vertical restraints on trade. *See, e.g.,* NYNEX Corp. v. Discon, Inc., 525 U.S. 128, 136 (1998) (finding that a vertical restraint which deprives a supplier of a potential customer is subject to the rule of reason analysis); Bus. Electronics Corp. v. Sharp Electronics Corp., 485 U.S. 717, 730 (1988) (distinguishing between vertical and horizontal restraints on trade). In the vertical restraint context, courts have cautioned that exclusive dealing[3] agreements "can have adverse economic consequences by allowing one supplier of goods or services unreasonably to deprive other suppliers of a market for their goods." ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 270 (3d Cir. 2012) (citing Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 45 (1984)). Plaintiffs allege a vertical agreement between CFFC and the casinos which

---

[2] "Plaintiffs make no factual allegations to state a plausible claim that [Harrah's] agreed with Defendatn Valley Forge or any other casino not to deal with Plaintiffs' MMA promotion" Harrah's mot. to dismiss, doc. no. 53, 8; *See* Valley Forge's mot. to dismiss, doc. no. 47, 17.

[3] "Exclusive dealing exists when a buyer and seller enter into an agreement in which the buyer will only purchase goods or services from that one seller and the agreement forecloses competition." BanxCorp v. Bankrate, Inc., 07-CV-3398, 2009 WL 2986126, at *4 (D.N.J. Sept. 14, 2009) (citing Barr Laboratories, Inc. v. Abbott Laboratories, 978 F.2d 98, 110 (3d Cir.1992). The venue agreement allegedly provides that the casinos will purchase MMA promotion services from CFFC and no other fight promotor. This foreclosed all other fight promotors from holding MMA events at the casinos, and is exclusive dealing.

prohibits plaintiffs and other promotors from hosting MMA events at the casinos. This is actionable concerted effort in antitrust law.

I recognize the logical force of the casinos' argument, but it lacks support in the law. It is hard to imagine what would motivate the casinos to restrict trade in a market in which they do not compete, but in this section 1 claim, the casinos can be liable even though they have no intent to reduce competition. *See* <u>Spectators' Commc'n Network Inc. v. Colonial Country Club</u>, 253 F.3d 215, 221 (5th Cir. 2001) ("Conspirators who are not competitors of the victim may have no interest in curtailing competition in a market in which they do not compete; nevertheless, when they have been enticed or coerced to share in an anticompetitive scheme, there is still a combination within the meaning of the Sherman Act."). It is sufficient to have alleged that CFFC devised a plan to reduce competition in the MMA market, and the casinos consciously committed to CFFC's illegal scheme. <u>Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.</u>, 998 F.2d 1224, 1243 (3d Cir. 1993) ("However, we have made it clear that the defendants need not share the *same* motive. Rather, all that is required is that they each have a motive to conspire" (citing <u>Fineman v. Armstrong World Indus., Inc.</u>, 980 F.2d 171, 214–15 (3d Cir.1992))). Accordingly, an agreement between the casinos and CFFC is actionable concerted conduct.

In the alternative, the casinos submit the written contracts they executed with CFFC. According to the casinos, the contracts conclusively disprove any exclusive

arrangement.[4] The contracts contradict the amended complaint's well pleaded allegation which I must accept as true at this stage of the case. Furthermore, the contracts, provided they are authentic, are not the only evidence of concerted action. *See* <u>Monsanto Co.</u>, 465 U.S. 752, 764 (1984) (concerted effort may be shown through direct and circumstantial evidence). A court will "look past the terms of the contract to ascertain the relationship between the parties and the effect of the agreement 'in the real world.'" <u>ZF Meritor, LLC</u>, 696 F.3d at 270 (citing <u>United States v. Dentsply Int'l, Inc.</u>, 399 F.3d 181 at 191 (3d Cir. 2005). "A plaintiff may plead an agreement by alleging direct or circumstantial evidence, or a combination of the two." <u>W. Penn Allegheny Health Sys., Inc. v. UPMC</u>, 627 F.3d 85, 99-100 (3d Cir. 2010). Among other things, plaintiffs allege that Mr. Feldman must consent before another fight promotor can gain entry into the defendant casinos. Am. compl. ¶¶ 50, 51. The complaint contains circumstantial evidence of exclusive dealing and is adequately pleaded. *See* <u>W. Penn Allegheny Health Sys. Inc.</u>, 627 F.3d at 99-100 ("If a complaint includes non-conclusory allegations of direct evidence of an agreement, a court need go no further on the question whether an agreement has been adequately pled." (citing <u>In re Ins. Brokerage Antitrust Litig.</u>, 618 F.3d 300, 323 (3d Cir. 2010))).

### 2) Unreasonable Restraint on Trade

There are two different standards used to determine if a restraint on trade is unreasonable. Typically, restraints on trade are judged by the rule of reason. <u>Ins. Brokerage</u>, 618 F.3d at 315 (citing <u>Leegin Creative Leather Prods., Inc. v. PSKS, Inc.</u>,

---

[4] An amendment to CFFC's contract with Harrah's provides CFFC with a right to first refusal for any MMA event to be scheduled at Chester Downs between August 27, 2013 and March 7, 2014. Harrah's mot. to dismiss am. compl., doc. no. 48, Ex. C.

551 U.S. 877, 882 (2007)). Under a rule-of-reason analysis, the plaintiffs "bear[] the initial burden of showing that the alleged [agreement] produced an adverse, anticompetitive effect within the relevant [product] and geographic market." Id. at 315 (citing Gordon v. Lewistown Hosp., 423 F.3d 184, 210 (3d Cir.2005)). "If the plaintiff carries this burden, the court will need to decide whether the anticompetitive effects of the practice are justified by any countervailing pro-competitive benefits." Id. at 316 (citing Eichorn v. AT & T Corp., 248 F.3d 131, 143 (3d Cir.2001)). On the other hand, there are some agreements which are deemed *per se* illegal and are conclusively presumed to be unreasonable "because of their pernicious effect on competition and lack of any redeeming virtue…." United States v. Brown Univ. in Providence in State of R.I., 5 F.3d 658, 669 (3d Cir. 1993) (citing Northern Pacific Ry. Co. v. United States, 356 U.S. 1, 5 (1958)).

Plaintiffs urge me to find that the agreement alleged between CFFC and the casinos is *per se* illegal. I will decline the invitation because the agreements, as alleged, did not impose price constraints on CFFC or the casinos. [5] NYNEX Corp., 525 U.S. at 136 ("[V]ertical restraint is not illegal *per se* unless it includes some agreement on price or price levels." (citing Business Electronics Corp. V. Sharp Electronics Corp., 485 U.S. 717, 735-36 (1988))); ZF Meritor, LLC, 696 F.3d at 271 ("Due to the potentially procompetitive benefits of exclusive dealing agreements, their legality is judged under the rule of reason." (citing Tampa Elec. Co. v. Nashville Coal Co., 365 U.S. 320 at 327

---

[5] In response to defendants' motion, plaintiffs assert he alleged a price fixing scheme. The only allegation of price fixing is between CFFC and XFE. How such price fixing could occur after CFFC and XFE merged is questionable. In any event, plaintiffs do not allege that the promotors conspired with the casinos to fix prices.

(1961))). To plausibly state a claim for exclusive dealing subject to the rule of reason, plaintiffs must plead: 1.) the relevant product market; 2.) the relevant geographic market and 3.) that the contract forecloses a substantial share of the competition in the relevant product and geographic markets. Tampa Elec. Co., 365 U.S. at 327 – 28. Defendants contend that the relevant markets are ill-defined.

"The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." Brown Shoe Co. v. United States, 370 U.S. 294, 325 (1962). In other words, the relevant market includes all products a buyer would purchase if the seller's product was unavailable or too expensive. *See* United States v. E. I. du Pont de Nemours & Co., 351 U.S. 377, 394 (1956). While the proper product market is best determined by the trier of fact, Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 199 (3d Cir.1992), a complaint is legally insufficient when the proposed market clearly excludes interchangeable products. Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436 (3d Cir. 1997). Such a problem arises when plaintiffs unnecessarily narrow the relevant product market to increase the defendant's relative market power. *See* Id. at 438 (Court rejected plaintiff's alleged relevant product market which was limited to pizza ingredients approved for use by Domino's; product market included pizza ingredients used by all pizza restaurants).

The parties dispute what product is at issue in this litigation. Plaintiffs define the relevant product as MMA events. Am. compl. ¶ 65. Defendants, on the other hand, claim that the relevant product market is MMA event venues. Defendants maintain that

plaintiffs' product definition is deficient because it fails to consider the interchangeability of casinos with other MMA event venues.[6] Given that this is a motion to dismiss, plaintiffs' theory of the case controls. Plaintiffs aver that CFFC's exclusive access to the casinos will eliminate competition in the MMA event market. The proper interchangeability inquiry considers what other fight events spectators will attend if CFFC becomes the only promoter of MMA events and raises prices.[7] Focusing, instead, on what other venues spectators will patronize is largely irrelevant if CFFC is the only company promoting MMA events. Therefore, plaintiffs have not clearly ignored substitute products by defining the product as MMA events.

Defendants attack plaintiffs' proposed geographic market as impermissibly vague. The geographic market must "correspond to the commercial realities of the industry," and may be as small as a single metropolitan area. Brown Shoe Co., 370 U.S. at 336. It is quite clear that plaintiffs have limited the geographic area to the Philadelphia region. Am. compl. ¶68. Indeed, the term "Relevant Geographic Market" is set out in bold under its own heading in the amended complaint. Defendants protest that plaintiffs do not apply this definition consistently throughout the complaint. I disagree. Any pleadings pertaining to events outside the Philadelphia region give context to the allegations and do not alter the defined geographic market. If discovery supports an expansion of the geographic

---

[6] "There are other casinos in Pennsylvania, Delaware and New Jersey …. None are considered or explained in the context of the supply and demand conditions in Plaintiffs' alleged product market definition. Nor is there any discussion of non-casino venues, such as Plaintiffs' current venue, that can host MMA events. Valley Forge's Mot. to Dismiss, doc. no 47-1, 20.

[7] Defendants also complain that plaintiffs do not consider boxing events in their market definition. I disagree. Plaintiffs' product definition is broad enough to include boxing matches, i.e. a combat sport which features two competitors fighting inside an enclosed area. Am. compl ¶ 66.

market, I will reconsider the issue on a motion for summary judgment, but for the purposes of this motion, the pleaded geographic market is satisfactory.

### 3) Affecting interstate commerce

"[T]he interstate commerce requirement of the Sherman Act may be satisfied by demonstrating that defendant's activities either are in interstate commerce or affect interstate commerce." Brader v. Allegheny Gen. Hosp., 64 F.3d 869, 873 (3d Cir. 1995) (citing McLain v. Real Estate Bd. of New Orleans, Inc., 444 U.S. 232, 242 (1980). CFFC's allegedly anti-competitive conduct is purely local; therefore, plaintiffs must identify how CFFC's actions affected activity in interstate commerce. McLain, 444 U.S. at 242. According to the amended complaint, CFFC's control of the casino venues has allowed CFFC to sign nearly 100 fighters to exclusive contracts in both Pennsylvania and New Jersey. Am. compl. ¶¶ 59, 60. Given the broad reach of the Sherman Act, these allegations easily satisfy plaintiffs' pleading burden. *See* Brader, 64 F.3d at 873. As a result, plaintiffs have plausibly pleaded each element of a section 1 claim, and I will deny the motions to dismiss Count 1.

### c) Count 2 – Essential Facilities Doctrine

"[U]nder the 'essential facilities' or 'bottleneck' doctrine, 'a business or group of businesses which controls a scarce facility has an obligation to give competitors reasonable access to it.'" Cyber Promotions, Inc. v. Am. Online, Inc., 948 F. Supp. 456, 460 (E.D. Pa. 1996) (citing Byars v. Bluff City News Co., Inc., 609 F.2d 843, 846, 856 & n. 34 (6th Cir.1980)). The elements of an essential facility claim are: "(1) control of the essential facility by a monopolist; (2) the competitor's inability practically or reasonably

to duplicate the essential facility; (3) denial of the use of the facility to a competitor; and (4) the feasibility of providing the facility." <u>Ideal Dairy Farms, Inc. v. John Labatt, Ltd.</u>, 90 F.3d 737, 748 (3d Cir. 1996).

Plaintiffs cannot plead a viable essential facilities claim against the casinos because plaintiffs have not alleged that the casinos are monopolists. The proper defendant for an essential facility claim is the *monopolist* in control of the facility. *See* <u>Id.</u>, at 748; <u>Cyber Promotions, Inc.</u>, 948 F. Supp. at 460 (dismissing essential facility claim because defendant was not a monopolist). I am unaware of any caselaw supporting essential facility liability against the *facility* which is controlled by a third party monopolist. CFFC, not the casinos, is the "monopolist" in the plaintiffs' view. There is no allegation that either casino is attempting to monopolize the MMA market in the Philadelphia region. Rather, the casino venues are being controlled by the alleged monopolist. Plaintiffs have not stated an essential facilities claim against the casinos, and I will dismiss Count 2 with prejudice as to the moving defendants.

### d) Count 3 – Attempt to Monopolize

Section 2 of the Sherman Act provides: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States … shall be deemed guilty of a felony…." 15 U.S.C. § 2.[8] The Clayton Act authorizes private individuals who are injured by conduct proscribed by the Sherman Act to bring a civil

---

[8] To the extent plaintiffs assert an attempt to monopolize claim under section 1 of the Sherman Act, the claim is dismissed. An attempt to monopolize claim only exists under section 2 of the Sherman Act.

action against the monopolist causing them harm. 15 U.S.C. § 15 (a). A plaintiff suing a monopolist under section 2 of the Sherman Act may assert three distinct causes of action: 1.) monopolization, 2.) attempted monopolization, and 3.) conspiracy to monopolize. *See* Carpet Grp. Int'l v. Oriental Rug Importers Ass'n, Inc., 256 F. Supp. 2d 249, 282 (D.N.J. 2003). While Count 3 is labeled attempt to monopolize, the allegations sound more in conspiracy to monopolize. Either way, the amended complaint fails to state a claim.[9]

The elements of an attempted monopolization claim are: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456 (1993). A claim of conspiracy to monopolize may arise from conduct demonstrating: "(1) an agreement to monopolize; (2) an overt act in furtherance of the conspiracy; (3) a specific intent to monopolize; and (4) a causal connection between the conspiracy and the injury alleged." Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 253 (3d Cir. 2010) (citing United States v. Yellow Cab Co., 332 U.S. 218, 224–25 (1947); Am. Tobacco Co. v. United States, 328 U.S. 781, 788 (1946)).

Count 3 is not a plausible statement of either claim against the casinos. Instead, the pleadings are almost entirely directed at CFFC. The paragraphs detail how CFFC has gained control of the casino venues in order to restrict trade in the MMA event market.

---

[9] To the extent plaintiffs plead a conspiracy to attempt to monopolize, such a claim does not exist. IIIB, Phillip Areeda and Herbert Hoovenkamp, Antitrust Law ¶809 (3d ed. 2006) ("An occasional complaint has alleged that the defendant conspired to attempt to monopolize. Courts have correctly held that §2 states no such offense. Nor is there any need for it, because the combination that offends antitrust policy violates § 1.")

Am. compl. ¶¶ 88, 89. The plaintiffs believe that CFFC's control over the casino venues has allowed CFFC to achieve dominant market power. Id. ¶¶ 91, 92. They then jump to the conclusion that, "Both Casino defendants … have participated in this very same monopoly conspiracy being carried out by [CFFC]." This conclusory statement is insufficient to plead a cause of action for either attempted monopolization or conspiracy to monopolize. *See* Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 255 (3d Cir. 2010) ("But to survive dismissal it does not suffice to simply say that the defendants had knowledge; there must be factual allegations to plausibly suggest as much." (citing Twombly, 550 U.S. at 564)).

Further, the attempted monopolization and conspiracy claims have a common element of specific intent to monopolize. This specific intent requirement sets section 2 claims apart from section 1 claims. *See* Int'l Distribution Centers, Inc. v. Walsh Trucking Co., 812 F.2d 786, 793 (2d Cir. 1987) ("Unlike the proof required to establish a conspiracy to monopolize under section 2, a specific intent to create a monopoly is not required under section 1."). In support of their section 1 claim, plaintiffs do not allege that the casinos intended to monopolize the MMA event market. Rather, allegations of CFFC's intent to restrict trade in the relevant market combined with the casinos' conscious commitment to the conspiracy were sufficient with respect to Count 1. *See* Petruzzi's IGA Supermarkets, Inc., 998 F.2d at 1243. Different standards apply to section 2 claims; plaintiffs must plead specific intent as to each party. *See* Todorov v. DCH Healthcare Auth., 921 F.2d 1438, 1460 n. 35 (11th Cir. 1991) ("[W]e analyze the conduct of [each defendant] separately to determine whether [plaintiff] has a valid section 2 claim

for relief."). There are no allegations regarding the casinos' intent to monopolize the MMA market. Because the casinos do not compete in the MMA event market, there is no basis to infer they acted with specific intent to monopolize. I will dismiss Count 3 with prejudice.

### e) Count 4 – Tortious Interference with Contract

Plaintiffs allege Mr. Freedman tortiously interfered with plaintiffs' prospective contractual relations with Valley Forge. Am. compl. ¶¶ 33, 34, 95; Pls.' Resp. Br., doc. no. 61, 29. To prevail on this claim, plaintiffs must show: "(1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct." Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 184 (3d Cir. 1997) (citing Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 471 (1979)).[10] Pennsylvania imposes a two year statute of limitations for this cause of action. 42 Pa.C.S. § 5524(3); Torchia v. Keystone Foods Corp., 635 A.2d 1082, 1086 (1993).

---

[10] I have federal question jurisdiction over plaintiffs' antitrust claims. 28 U.S.C. § 1331. I have supplemental jurisdiction over the pendent state law claims. § 1367. When considering the motions to dismiss the state law counts, I must apply Pennsylvania law as interpreted by the Pennsylvania Supreme Court. McKenna v. Pac. Rail Serv., 32 F.3d 820, 825 (3d Cir. 1994) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)) ("In so doing, we are not free to impose our own view of what state law should be; we are to apply state law as interpreted by the state's highest court."); Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 701 (3d Cir. 1993) (applying Erie to claims under supplemental jurisdiction). When the Supreme Court has not spoken on the issue, I refer to the decisions of the Pennsylvania Superior Court and Pennsylvania Commonwealth Court to predict how the high court would rule. See McKenna, 32 F.3d at 825. Additionally, I will follow Third Circuit's interpretation of Pennsylvania law unless it is inconsistent with a subsequent holding of the state Supreme or intermediate appellate courts. Aceto v. Zurich Ins. Co., 440 F.2d 1320, 1322 (3d Cir. 1971) ("No one may properly rely upon what we have held as more than persuasive on a question of Pennsylvania law so long as the Pennsylvania Supreme Court has not ruled upon that legal question."); Largoza v. Gen. Elec. Co., 538 F. Supp. 1164, 1166 (E.D. Pa. 1982) ("[I]t is axiomatic that this court is bound by a decision of the Third Circuit predicating Pennsylvania law unless the state supreme court issues a contrary decision or it appears from a subsequent decision of the appellate courts that the court of appeals erred.").

As Vice President of Player Development at Valley Forge, Mr. Freedman cannot possibly be liable for interfering with plaintiffs' prospective contract with Valley Forge. "Essential to the right of recovery on this theory is the existence of a contractual relationship between the plaintiff and a party other than the defendant." <u>Nix v. Temple Univ. of Com. Sys. of Higher Educ.</u>, 596 A.2d 1132, 1137 (Pa. Super. 1991) (citations omitted). Agency principals dictate that a corporate officer acts on behalf of the corporation; therefore, a corporate officer is not a third party when acting in his official capacity. <u>Nix</u>, 596 A.2d at 1137 (citing <u>Menefee v. Columbia Broadcasting System, Inc.</u>, 329 A.2d 216 (Pa. 1974)). If Mr. Freedman frustrated plaintiffs' efforts to host an MMA event at Valley Forge, that was a business decision which does not support a claim for tortious interference.

In response, plaintiffs argue that Mr. Freedman was employed by Harrah's when he interfered with plaintiffs' prospective contract with Valley Forge. Plaintiffs submit a series of emails exchanged between Mr. Kerwin and Jennifer Woodeshick, National Sales Manager for Valley Forge Casino. The emails are dated between November 29, 2011 and December 5, 2011 and discuss scheduling an MMA fight in early April 2012. This conduct happened more than two years before the complaint was filed on September 8, 2014. Any claims arising from the April 2012 events would be time barred. I will dismiss Count 4 as to Mr. Freedman with prejudice.

### f) Mr. Kerwin's continued representation of Xtreme Caged Combat

Mr. Kerwin is proceeding in this action *pro se*. Although he is not an attorney, Mr. Kerwin also attempted to represent XCC. By orders dated October 27, 2014 and

November 10, 2014, I instructed XCC to retain counsel. Mr. Rushie entered his appearance on behalf of XCC on December 4, 2014, the same day as the Rule 16 conference in this matter. Nonetheless, a filing error suggests that Mr. Rushie's representation is a sham.

Valley Forge moved to dismiss the original complaint on September 29, 2014. Doc. no. 4. As the parties discussed at the Rule 16 conference, plaintiffs chose not to respond to Valley Forge's motion and instead filed an amended complaint. Doc. no. 45. Valley Forge renewed its objections and filed a motion to dismiss the amended complaint on January 2, 2015. Doc. no. 47. Valley Forge served the January 2, 2015 motion on Mr. Rushie by the court's electronic filing system. Since Mr. Kerwin is not an ECF user, Valley Forge attempted to serve the January 2, 2015 motion on Mr. Kerwin by email. However, defense counsel inadvertently emailed Mr. Kerwin the September 29, 2014 motion.

Plaintiffs filed a joint brief in opposition which erroneously responded to the September 29, 2014 motion. Doc. no. 50. This is evident because plaintiffs' brief did not address several key arguments which were made in the January 2, 2015 motion, but were not raised in the September 29, 2014 motion. The parties recognized the error, doc. no. 68 at 13-14, and I granted plaintiffs leave to file a supplemental brief to address the missing arguments. Doc. no. 66.

Mr. Rushie could not have prepared a response to a motion which he never received. Valley Forge served Mr. Rushie with the January 2 motion. Mr. Rushie did not enter his appearance until December 4, 2014, so he did not receive original service of the

September 29, 2014 motion. Furthermore, the plaintiffs decided to file an amended complaint on December 4, 2014, so there is no reason to believe that Mr. Rushie ever reviewed the September 29, 2014 motion. Mr. Kerwin, on the other hand, received the September 29, 2014 motion twice. Mr. Kerwin only obtained the January 2, 2015 motion after filing plaintiffs' brief in opposition. Since plaintiffs' opposition responded to the September 29, 2014 motion, which Mr. Kerwin possessed, and not the January 2, 2015 motion, which was served on Mr. Rushie, I can only conclude that Mr. Kerwin prepared the opposition brief on behalf of both plaintiffs without the assistance of Mr. Rushie.

Plaintiffs' conduct is in direct contravention of my orders dated October 27, 2014 and November 10, 2014. Mr. Kerwin's continued representation of XCC is a continuing violation of the rules of procedure and my orders. These continuing violations could lead to a finding of contempt. Appropriate sanctions for contempt may include dismissal of the complaint with prejudice.

**IV    Conclusion**

For the foregoing reasons, I will grant defendants' motions to dismiss in part. Counts 2, 3, and 4 are dismissed with prejudice as to Chester Downs and Marina LLC, Valley Forge Casino Resort and Joel Freedman. The motions are otherwise denied.

An appropriate order follows.